**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  12 CR 146 |
| | ) | Judge Edmond E. Chang |
| JEREMY HAMMOND, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO TERMINATE**
**HIS REMAINING TERM OF SUPERVISED RELEASE**

Defendant, **JEREMY HAMMOND**, by and through his attorney, **BRAD J. THOMSON**, pursuant to 18 U.S.C. §3583(e)(1) and Rule 32.1(B) of the Federal Rules of Criminal Procedure, respectfully moves this Court for early termination of his remaining term of supervised release in Case No. 12-CR-146.

Prior to filing, undersigned counsel discussed the matter with representatives of the U.S. Probation Office and the United States Attorney's Office for this district, who stated that the Probation Office and the Government have no objection to early termination.

In support of this Motion, Mr. Hammond, through counsel, shows to the Court the following:

1.      On March 5, 2012, Mr. Hammond was residing in Chicago, Illinois, and was arrested in relation to a criminal complaint filed in the U.S. District Court for the Southern District of New York. (Case No. 12-CR-185, S.D.N.Y, Dkt. 1).

2.      On March 6, 2012, Mr. Hammond appeared in this district for removal hearings before Magistrate Sheila M. Finnegan. Mr. Hammond waived his right to a detention hearing and was removed to the U.S. District Court for the Southern District of New York.

3.     On May 2, 2012, Mr. Hammond was charged by Superseding Indictment in the Southern District of New York with conspiracy to engage in computer hacking in violation of 18 U.S.C. §1030(b). (Case No. 12-CR-185, S.D.N.Y., Dkt. 9). As set forth in the Indictment, the charge was related to Hammond's involvement in the December 2011 hack of Strategic Forecasting, Inc. ("Stratfor"), a global intelligence firm in Austin, Texas.

4.     On May 28, 2013, Mr. Hammond entered into a plea agreement whereby he pled guilty. (Case No. 12-CR-185, S.D.N.Y.).

5.     On November 15, 2013, Mr. Hammond was sentenced to one hundred and twenty (120) months in prison. The district court imposed a supervised release term of three years. The terms of Mr. Hammond's supervised release include a number of special conditions. (Case No. 12-CR-185, S.D.N.Y., Dkt. 64, p. 4). *See* Attachment 1.

6.      The district court did not order Mr. Hammond to pay any restitution.

7.     After completing his term of incarceration, Mr. Hammond began his term of supervised release on March 5, 2021. Supervision was then transferred to the Northern District of Illinois. Specifically, on May 28, 2021, the case was transferred to this district. (Case No. 12-CR-185, S.D.N.Y., Dkt. 78). The case was then assigned to this Court on March 16, 2022. (Case No. 12-CR-146, N.D. Ill.).

8.     As of this filing, Mr. Hammond has completed over seventeen months of his supervised release, which is set to terminate on March 5, 2024. Mr. Hammond has remained in compliance with all terms of his supervised release and has been leading a successful life post-incarceration. He has been attending school at the City Colleges of Chicago and he has been working part time at a printing company. He does not owe restitution, fines, or any other outstanding financial obligations.

2

9.      In addition to his part time employment at a printing business, Mr. Hammond has engaged in the field of computer programming, online coding, and web development, working on a freelance basis. Due to Mr. Hammond's computer programming skills, he is highly qualified for other employment opportunities in web development on a contract basis. However, Mr. Hammond's special conditions of supervised release are especially restrictive and have placed limitations on his employment opportunities.

10.      Specifically, Mr. Hammond's supervised release includes the participation in the Computer/Internet Monitoring Program administered by the U.S Probation Office. The program allows the U.S. Probation Office to: "survey all activity on computer(s) or connected device(s) owned by the [Mr. Hammond]." *See* Attachment 1, Spec. Cond. ¶ 4. This surveillance and monitoring of Mr. Hammond's computer is conducted by RemoteCOM, a private corporation that contracts with the U.S. Probation Office. His supervised release also prevents him from taking certain online security precautions, such as encrypting his communication, encrypting his stored data, and taking steps to keep his identity private while online. *Id.*, at ¶¶ 7, 8, 9.

11.      Mr. Hammond's special conditions of supervised release also restrict his right to association. Specifically, his conditions direct that "the defendant shall have no involvement with any hacking-related or electronic civil disobedience websites and organizations, and shall have no involvement or contact with any civil disobedience organizations." *Id.*, at ¶ 4.

12.      Although some of Mr. Hammond's special conditions provide exceptions for employment, as a practical matter, such exceptions provide Mr. Hammond little relief. Mr. Hammond works on a freelance, contract basis, so his personal computer and other electronic devices are the same devices he uses for his employment. As such, the computer he uses for employment purposes is monitored by RemoteCOM. The fact that a third-party entity has access

to Mr. Hammond's computer raises obvious concerns for Mr. Hammond's clients and potential clients.

13.     Some of the language in Mr. Hammond's conditions of supervision is also vague and open to interpretation. For example, "encryption" or a "means to hide" one's identity online could potentially include a wide array of innocent online activity that constitute best practices in online security.

14.     In an abundance of caution, Mr. Hammond therefore has to balance his employment opportunities and his clients' interests in online security with his interest in avoiding prison.

15.     Similarly, it is entirely unclear as to what constitutes an "electronic civil disobedience website" or a "civil disobedience organization." A wide array of lawful and unlawful activity can fall within the concept of "civil disobedience," which can consist of forms of political protest that are largely nonviolent and may, or may not, include a conscientious violation of the law in pursuit of a larger sense of justice. Reasonable minds can, and do, disagree as to what type of activity should be considered "civil disobedience."

16.     Mr. Hammond's special condition becomes even more opaque as it doesn't simply restrict his own conduct, but prohibits his association with any "civil disobedience website" or "civil disobedience organization." "Civil disobedience" is generally viewed as a tactic or type of action, not a form of organization. It is therefore unclear whether any organization that occasionally engages in civil disobedience necessarily constitutes a "civil disobedience organization." Such a broad interpretation would essentially forbid Mr. Hammond from associating with a vast number of organizations engaging with nearly every significant political and social issue facing this country. For example, 16 members of the United States Congress

recently engaged in a high-profile civil disobedience action.[1] Does this establish the United States Congress as a "civil disobedience organization" and if so, would it be a violation of Mr. Hammond's supervised release if he were to contact a Member of Congress?

17.     Due to the concerns regarding this overbroad and vague special condition, Mr. Hammond has had to be circumspect to the point of being constrained. He has avoided associating with individuals, websites, businesses, or conferences that could provide him with employment or other professional networking opportunities. He has also been reticent to engage with lawful organizations advancing social causes that he cares deeply about, which has had a chilling effect on his rights to speech and association.

18.     As noted above, Mr. Hammond has displayed exemplary compliance for every condition of his supervised release. The restrictions on Mr. Hammond's computer use and the limits placed on his "involvement" with "civil disobedience organizations" curtail his ability to work as a web developer. Additionally, those restrictions have serious First Amendment implications.

19.     As the Court is aware, it has "wide discretion in determining whether to terminate an individual's term of supervised release." *United States v. Hook*, 471 F.3d 766, 771 (7th Cir. 2006). Mr. Hammond respectfully requests that the Court exercise its discretion to order early termination of his Supervised Release. Early termination is in the interests of justice and would save sparse resources, particularly those of the Probation Office, which has the charge of supervising numerous high-need individuals. *See* U.S. Courts, *Early Termination of Supervision Cost-Effective and Safe*, Sept. 24, 2013 (citing federal judiciary study and noting how "early

---

[1] Ellie Silverman, *Lawmakers, abortion rights protesters arrested outside Supreme Court*, Washington Post, July 19, 2022, https://www.washingtonpost.com/dc-md-va/2022/07/19/abortion-protest-capitol-lawmakers-arrested/, Last accessed August 26, 2022.

termination of supervision of low-risk offenders shows that the practice not only saves money, it does so without compromising public safety.").[2] Mr. Hammond has demonstrated that he is low-risk, and not an individual who requires ongoing and expensive supervision from the Probation Office.

20.     Undersigned counsel has informed Mr. Hammond's probation officer, Carrie Holberg, of his intention to file this motion. Ms. Holberg has represented that her office has no objection to the granting of this motion.

21.     Undersigned counsel has also communicated with the U.S. Attorney's Office regarding this request and Assistant U.S. Attorney Kirsten Moran has represented that the Government has no objection to the granting of this motion.


**WHEREFORE**, Defendant respectfully requests this Court terminate early his remaining term of supervised release.  In the alternative, Defendant respectfully requests modification of the special conditions of supervised release found in paragraphs 4, 5, 7, 8, and 9.

Respectfully submitted,

/s/ Brad J. Thomson
BRAD J. THOMSON
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave., #3
Chicago, IL 60642
(773) 235-0070
brad@peopleslawoffice.com

*Law student Julia L. Van Horn contributed
significantly to the drafting of this motion

---

[2] Available at: https://www.uscourts.gov/news/2013/09/24/early-termination-supervision-cost-effective-and-safe,
Last accessed August 26, 2022.